IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DORIS H. THOMAS                                                                                         PLAINTIFF

v.                                                                          CIVIL ACTION NO.1:10-CV-00334-SA-DAS

PREMIER PRODUCTIONS, INC.;
EXTRAORDINARY WOMEN, LLC;
AACC ACQUISITION CORPORATION, INC.;
and AXXIS, INC.                                                                                      DEFENDANTS

## MEMORANDUM OPINION

Currently before the Court are two Motions for Summary Judgment [130, 132].[1] Because the Court finds that there remains a genuine dispute of material fact regarding the existence of an unreasonably dangerous condition, the existence of a joint venture between the Defendants, and the operational capacity of Extraordinary Women, those motions are denied.

## FACTUAL BACKGROUND

The present suit arises out of a trip and fall accident that occurred October 23, 2009 at the BancorpSouth Arena (the Arena) in Tupelo, Mississippi. Plaintiff Doris Thomas, who allegedly suffered personal injury as a result of a fall while attending an Extraordinary Women Conference (EWC), filed suit against Defendants Premier Productions, Inc., AACC Acquisition Corporation, Inc., Extraordinary Women, LLC, and Axxis, Inc. Thomas grounds her theory of recovery against Defendants in both contract and tort law.

Thomas, who attended the EWC with a group of acquaintances, allegedly tripped over one or more electrical cables running from the stage area to the Arena's sound production booth.

---

[1] AACC has also filed a supplement to its Motion for Summary Judgment [134]. That supplement contains an additional affidavit and it is considered in conjunction with AACC's initial Motion for Summary Judgment [132].

The parties vigorously dispute the condition of the cables at the time of the incident. On one hand, the Defendants contend that the subject cables were covered with a rubber mat that had been taped down with yellow tape to warn attendees of the potential hazard. The Plaintiff, on the other hand, relies on the testimony of two witnesses to argue that the cables were neither covered nor marked with tape. Thomas, however, contends that regardless of whether the cables were covered or uncovered, the Defendants breached the duty of reasonable care owed to her by either negligently placing the cables or mat in the aisle or by failing to provide adequate warning of the dangerous condition.

On the date of the accident, it is undisputed that only Defendants AACC and Axxis had employees present at the event. Plaintiff argues, though, that AACC and Premier had consummated a joint venture to produce and promote the EWC tour. Although Defendants reject this allegation, it is uncontroverted that the entities did at least combine forces for the purpose of taking the EWC on a regional tour. Premier was responsible for publicizing the tour and booking venues, while AACC bore the responsibility of actually producing the EWC events. Axxis, in turn, was contracted to provide lighting and audio-visual services for the events. Extraordinary Women was conceived as a type of umbrella entity, which was envisioned as a vehicle to ultimately facilitate a formal joint venture partnership between AACC and Premier. Those plans never came to fruition, however, and Extraordinary Women, LLC, is now dissolved.

Defendants Extraordinary Women, Premier, and AACC have subsequently filed motions for summary judgment. Extraordinary Women argues that it is no longer a legal entity, that it never conducted business in the name of Extraordinary Women, that the EWC events were carried out by other entities, and that it is due to be dismissed. Premier contends that due to the

fact they had no agents present at the EWC, they had no notice or control and cannot be held liable under a premises liability theory. Finally, AACC argues that although it had agents present, the mat or cables do not, as a matter of law, present an unreasonably dangerous condition and Plaintiff is thus precluded from recovery.

SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However,

conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## DISCUSSION

I.   Mutual Liability of the Parties

Plaintiff's theory of recovery against Premier turns, at least initially, squarely upon the determination of whether Premier and AACC were engaged in a joint venture. Aside from Premier's contention that it had no agents present at the Arena, the arguments of the Defendants' largely reflect one another and the Court thus addresses whether they might share mutual liability before proceeding further. The parties argue that Mississippi law should be used to discern the existence of a joint venture and the Court relies upon that determination.

Under Mississippi law, a joint venture is "an association of persons to carry out a single business enterprise, for which purpose they combine their property, money, efforts, skill and knowledge." Pittman v. Weber Energy Corp., 790 So. 2d 823, 827 (Miss. 2001) (quoting Hults v. Tillman, 480 So. 2d 1134, 1143 (Miss. 1985)). Its existence is contingent upon an agreement between the parties, but no formal contract is required. Pennebaker v. Gray, 924 So. 2d 611, 618 (Miss. 2006). What is essential, however, is "the idea that the parties are engaging in the undertaking with both parties owning the venture, with a right of mutual control, and joint obligations and liabilities." Hults, 480 So. 2d at 1146. The intent to engage in such an undertaking may be inferred from their actions or conduct. Allied Steel Corp v. Cooper, 607 So. 2d 113, 117 (Miss. 1992) (citing Hults, 480 So. 2d at 1143, 1146).

Premier contends that although a formal joint venture between the two parties was contemplated, the principals were unable to reach a final agreement. In support of this, Premier offers several emails exchanged between the parties, one of which states, "if we cannot come to a speedy and equitable agreement then we are prepared to finish promoting the Spring dates that we have on the books and walk away as friends." Further, Premier proffers an affidavit of its Chief Financial Officer, in which Alexander Smith affirms that although the two entities had discussed a joint venture that would operate as Extraordinary Women, LLC, they were unable to reach an agreement and the relationship could not be formally consummated though the LLC. Finally, Premier relies on an email which states, "we have come to the end of any negotiations here…the problem is when we have no formal agreement of any kind, we are not working TOGETHER."

The emails, although likely dispositively establish that the parties were unable to reach a final agreement for purposes of formally memorializing their relationship in the form of an LLC, do not reveal that the parties were not, at that time, already operating a joint venture on a more informal basis. As reiterated in <u>Pennebaker</u>, no formal agreement is required to support the existence of a joint venture. 964 So. 2d at 611. What is required is that the parties combine money, efforts, skill, and knowledge toward a unified enterprise. <u>Pittman</u>, 790 So. 2d at 827. The emails do indeed seem to establish that although the parties were planning to eventually further formalize the status of their relationship, they were operating with some sort of agreement at present.

For instance, in discussing the proposed ownership allotment for the potential LLC, the correspondence between AACC and Premier at one point states, "we believe that the ownership

allotments fairly represent both the *present contributions* of each party while also giving some added value for both the concept and event history." (Emphasis added). Further, in regard to the proposed management and control of the organization, the correspondence states, "[t]he ability to participate in management decisions will be reflected in the same manner as is presently allocated under the aforementioned ownership percentages. Let's keep this as simple as we can. It's not complicated now—let's not ruin it with any more than we need to best run the company."

Moreover, the statement that the parties were not working "TOGETHER" is far less persuasive in its context. In actuality, that section reads:

> Jimmy, I must tell you that Roy and I have decided that we have come to the end of any negotiations here. We love working with both you and Tim with regard to E-Women. We believe that together we can make a very formidable team and that together we can continue to impact our world in a significant way while developing a property that continues to grow in value and potential. The key word in all of this is the word "TOGETHER." By continuing to work TOGETHER we can—
> 
> Continue to grow the value and potential of E-Women
> 
> Impact our world
> 
> And do all this under our present set-up whereby each party is utilizing their strength to maximize success.
> 
> The problem is when we have no formal agreement of any kind, we are not working TOGETHER.

In fact, in another section, the correspondence suggests that the parties did view themselves as working "together." It states, "Jimmy we believe we have the same heartbeat as you and Tim with regard to EW…To do this we need to join hands and go forward together. We're already walking together now and have done so for the past year in a manner that has worked for both of us."

6

Thus, the Court finds that there is at least a genuine dispute of material fact regarding the existence of a joint venture between Premier and AACC. While the correspondence reveals that the two parties were unable to reach agreement regarding a memorialization of the relationship in a formal joint venture contract, it also reveals that the parties were presently operating under some more informal agreement. The Court is unable to presently determine that it would be impossible to infer that the parties had agreed to an informal joint venture regarding the EWC tour. Moreover, the Court is not persuaded that the fact that the parties failed to reach final agreement regarding the creation of the LLC precludes a finding of an informal joint venture. The general rule, as stated in the Corpus Juris Secundem, is that "the mere intention on the part of the interested parties to carry out some or all aspects of an enterprise through the medium of a corporation in the future is not inconsistent with the present existence of a joint venture." 48A C.J.S. Joint Ventures § 18 (citing <u>Muccilli v. Huff's Boys' Store, Inc.</u>, 473 P. 2d 786, 786 (Ariz. App. 1970). Although merely persuasive authority, the Court finds the logic applicable here and determines that there remains a dispute regarding the existence of a joint venture during the contemplation of a more formal agreement.

II. <u>Negligence</u>

"Premises liability analysis under Mississippi law requires three determinations: (1) legal status of the injured person, (2) relevant duty of care, and (3) defendant's compliance with that duty." <u>Wood v. RIH Acquisitions MS II LLC</u>, 556 F.3d 274, 275 (5th Cir. 2009) (citing <u>Massey v. Tingle</u>, 867 So. 2d 235, 239 (Miss. 2004)). In the present case, it is undisputed that Plaintiff was a business invitee at the time of her accident. Accordingly, the owner or lessee had a duty to

keep the business premises "reasonably safe and to warn of any dangerous condition that is not readily apparent." Parker v. Wal-Mart Stores, Inc., 261 F. App'x 724, 725-26 (5th Cir. 2008). However, the owner or lessee "is not an insurer of the safety of its invitees," and it is "only liable for injuries caused by a condition that is unreasonably dangerous." Id. at 726.

As a general rule, conditions that are the "type of dangers which are usual and which customers normally expect to encounter on the business premises" are not considered unreasonably dangerous. Tate v. S. Jitney Jungle Co., 650 So. 2d 1347, 1351 (Miss. 1995). Thus, the presence of typical hazards such as water hoses, thresholds, curbs, and mats will generally not give rise to a cause of action. See e.g. Smith v. Fed. Cleaning Contractor Inc., 126 F. App'x 672, 674-75 (5th Cir. 2005) (finding a water hose left at store's entrance insufficient to constitute an unreasonably dangerous condition); McGovern v. Scarborough, 566 So. 2d 1225, 1228 (Miss. 1990) (finding door threshold insufficient to constitute an unreasonably dangerous condition); Delmont v. Harrison Cnty Sch. Dist., 944 So. 2d 131, 133 (Miss. Ct. App. 2006) (finding a cheerleading mat left in a common area insufficient to constitute an unreasonably dangerous condition); Patten v. Wal-Mart Stores, Inc., 2010 WL 3937957 *2 (N.D. Miss. Oct. 5, 2010) (finding overlapped floor mats insufficient to constitute an unreasonably dangerous condition).

However, this general exclusion of liability is tempered by the fact that the Fifth Circuit has also held that such usual conditions may nonetheless be unreasonably dangerous if exacerbated by an additional unsafe factor. Woten v. Am. Nat'l Ins. Co., 424 F. App'x 368, 370-71 (5th Cir. 2011). In Woten, for instance, the district court granted summary judgment in favor of the premises owner when the plaintiff alleged that she tripped over a curb inside a parking

garage due to inadequate lighting.  Id. at 369.  The Fifth Circuit reversed, finding that although the curb in and of itself might be deemed a usual hazard incapable of constituting an unreasonably dangerous condition, the fact that it was coupled with plaintiff's allegations of inadequate lighting precluded the grant of summary judgment.  Id. at 370.

In the case at hand, the cord upon which Thomas allegedly tripped is markedly similar to the litany of typical hazards that normally fail to constitute an unreasonably dangerous condition. See Smith, 126 F. App'x at 674.  Thomas, herself, even analogizes the cord to a garden hose. Much like in Smith, then, such a cord or cable at a concert venue would probably be the type of normal hazard customers expect to encounter and would thus fail to constitute an unreasonably dangerous condition.  This Court need not reach that specific question, however, as Thomas additionally asserts that she failed to observe the cord due to inadequate lighting.  Under the holding of Woten, summary judgment is inappropriate due to the fact that although the placement of the cord itself might not, as a matter of law, be unreasonably dangerous, the Plaintiffs' additional assertions of inadequate lighting push the issue toward one more appropriate for a jury.  Although the role of the court is to determine the "outer limit of what a reasonable juror could find," questions within that limit of whether a premises is reasonably safe "[are] a question for jurors."  Id. at 371  (quoting Maddox v. Townsend & Sons, Inc., 639 F. 3d 214, 221 (5th Cir. 2011).  Although a close call, this Court determines that the present question is, at least for the moment, within the limits of what a reasonable juror could find.

Collectively, the Defendants further contend, however, that even if Plaintiff has shown that there is a jury question regarding the existence of an unreasonably dangerous condition, BancorpSouth Arena, rather than the named Defendants, was in control of the premises and

responsible for the safety of the Plaintiff. As pointed out by AACC, the general rule provides that "liability depends upon control, rather than ownership, of the premises." McGill v. Laurel, 173 So. 2d 892, 900 (Miss. 1965). According to the Defendants, despite the fact that Premier Productions was the lessee of the Arena, the Arena maintained possession and control of the premises for purposes of liability. In support of such an argument, the Defendants proffer a "right of entry" clause contained in the contract between the entities, which states:

> In permitting the use of the space herein mentioned, BANCORPSOUTH ARENA retains the right to enforce all necessary and proper rules for the management and operation of the premises involved, including the right to interrupt or terminate any performance if deemed necessary by BANCORPSOUTH ARENA in its sole discretion, in the interest of public safety or the maintenance of good order.

There are two flaws in Defendants' reasoning. First, Defendants' broadly stated principle of law regarding allocation of liability in the lessor/lessee relationship generally shields non-present *landlords* from liability. See Dupree v. Barnhills Buffet, Inc., 2008 WL 2357632, *2 (N.D. Miss. June 5, 2008) (applying general rule of non-liability when there was no showing absentee landlord exercised any control). Thus, the general rule is that a lessee, such as Premier, would bear the burden of liability. As stated in Wilson v. Allday, the general rule is that "[t]his duty of care applies even though the landlord may also have some control over the particular premises and may also be held liable for injuries thereon." 487 So. 2d 793, 797 (Miss. 1986), overruled on other grounds by Mayfield v. The Hairbender, 903 So. 2d 733 (Miss. 2005) (quoting 52 C.J.S. Landlord & Tenant, § 436).

Here, Premier is the lessee of the subject premises and would typically be presumed to therefore control the premises. The Court subsequently finds Defendants' proffered cases, which establish that absentee landlords incur no premises liability, less than dispositive. Additionally,

although glossed over by Defendants, the contract between the present parties indeed contains a right of entry clause, but it also contains an indemnification clause, requiring the tenant to indemnify, defend, and hold harmless the Arena from any suit or demand resulting from tenant's use. Such a clause runs directly counter to Defendants' theory that the Arena maintained exclusive control of the premises. This Court finds that the right of entry clause contained in the contract does not establish that the lessee had no control over the premises, and therefore holds that there is a genuine dispute of material fact regarding the lessee's possession and control of the premises.

III.  Breach of Contract

The Defendants argue that Plaintiff's contract claim is nothing more than a restatement of her tort claim and requires a parallel analysis. Having determined that summary judgment is inappropriate in regard to Plaintiff's negligence claim, the Court finds that summary judgment would also be improper here.

IV.  Existence of Extraordinary Women

Extraordinary Women contends that it had nothing to do with the subject conference, never hired employees or designated officers, never received any income, and has been dissolved. Thus, they contend, they are due to be dismissed as a matter of law. The fact that Extraordinary Women appears on the invoice submitted by Axxis, according to Extraordinary Women, shows nothing more than the fact that AACC might have used the trade name "Extraordinary Women." Defendant, however, has cited the Court to no proposition of law that would demonstrate the appropriateness of summary judgment and the Court is unaware of any either. Summary judgment as to Extraordinary Women is therefore also inappropriate.

CONCLUSION

For the reasons stated above, Defendants' Motions for Summary Judgment are denied.

So ORDERED on this, the 4th day of January, 2013.

                                        **/s/ Sharion Aycock**
                                        **UNITED STATES DISTRICT JUDGE**